IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WOJCIECH CZARNIECKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 5316 |
| | ) | |
| CITY OF CHICAGO and MATTHEW | ) | |
| TOBIAS, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Wojciech Czarniecki brings the present action against Defendants City of Chicago and Chicago Police Officer Matthew Tobias, in his individual capacity, alleging national origin discrimination in violation 42 U.S.C. § 1983.[1] Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants in part and denies in part Defendants' summary judgment motion.

## BACKGROUND

Defendant City of Chicago is a municipal corporation incorporated under the laws of the State of Illinois. (R. 56-1, Defs.' Rule 56.1 Stmt. Facts ¶ 1.) In November 1986, Defendant Matthew Tobias joined the Chicago Police Department ("CPD") and in June 2005, Tobias

---

[1] In response to Defendants' motion, Czarniecki states that he is abandoning his race and gender claims. (R. 69-1, Pl.'s Opp. Mem., at 1 n.1.) Czarniecki, however, did not allege a gender discrimination claim in his Complaint. (R. 1-1.) Instead, Czarniecki brought race, color, and national origin discrimination claims in his Complaint. (*Id*.) The absence of any discussion of Czarniecki's color discrimination claim in his legal memorandum, however, amounts to the abandonment of that claim. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007).

became the Assistant Deputy Superintendent ("ADS") of the Education and Training Division of the CPD ("Training Academy"). (*Id.* ¶ 2.) As the ADS of the Training Academy, Tobias is responsible for the command of the Division. (*Id.*)

Plaintiff Wojciech Czarniecki was employed by the CPD as a Probationary Police Officer ("PPO") from November 27, 2006 until his discharge on February 9, 2007. (*Id.* ¶ 3.) During the time that Czarniecki was employed as a PPO, he was assigned to the Training Academy. (*Id.*) Czarniecki is a white male of Polish descent. (*Id.* ¶ 4.) Czarniecki admits that he was an at-will employee and that he signed documents acknowledging that he received and read the CPD's Recruit Procedural Manual and the CPD's Rules and Regulations. (*Id.* ¶¶ 8-10.) Also, Czarniecki understood that his failure to comply with these rules could result in his discharge. (*Id.* ¶ 10.)

Rule 3-2 of the Recruit Procedural Manual concerns the CPD's expectations that recruits be honest at all times. (*Id.* ¶¶ 12-13.) Rule 4-10 of the Recruit Procedural Manual, entitled "Insubordination," provides that "Recruits are expected to immediately respond to any lawful instructions, directions, or orders of any superior officer. Recruits will be held accountable for their action, or lack of action, when an instruction is given." (*Id.* ¶ 15.) Rule 6 of the CPD's Rules and Regulations prohibits "[d]isobedience of an order or directive whether written or oral" and Rule 14 prohibits "making a false report, written or oral." (*Id.* ¶¶ 17-18.) Based on these rules, the CPD maintains that it terminated Czarniecki's at-will, probationary employment based on Czarniecki's lack of honesty concerning his test-taking and his failure to follow Tobias' direct order to not discuss the test-taking matter with other recruits. (*Id.* ¶¶ 61-62.)

Czarniecki, on the other hand, argues that Tobias terminated his employment based on

2

unlawful national origin discrimination, namely, that Czarniecki is of Polish decent. More specifically, Czarniecki testified at his deposition that sometime between February 2 and February 7, 2007 – after Tobias had commenced an investigation into the allegations of Czarniecki's academic dishonesty – Tobias asked him a series of questions regarding his educational background, where he was born, where his parent were from, and what language he spoke at home. (*Id*. ¶¶ 54-55.) After Czarniecki responded that he was born in Poland, that his parents are Polish, and that they spoke Polish at home, Tobias responded, "we don't need people like you." (*Id.* ¶ 55.) The CPD terminated Czarniecki's employment shortly thereafter on February 9, 2007. (*Id* ¶ 3.)

## **LEGAL STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for

trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

I.  **National Origin Claim Against Tobias**

   A.  **Intentional Discrimination**

Czarniecki brings his national origin discrimination claim pursuant to 42 U.S.C. § 1983, yet does not address the Equal Protection clause regarding his claim against Tobias. *See Salas v. Wisconsin Dep't Corr.*, 493 F.3d 913, 926 (7th Cir. 2007). Nevertheless, employees may establish equal protection violations against their employers by using the direct or indirect method of proof as enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *See Salas,* 493 F.3d at 926 ("The only difference is that a Title VII claim is against an employer, while an equal protection claim is against individual employees."); *see also Williams v. Seniff,* 342 F.3d 774, 788 (7th Cir. 2003). Czarniecki seeks to establish intentional discrimination under the direct method of proof based on circumstantial evidence.

Under the direct method of proving intentional discrimination, a plaintiff is required to set forth "direct or circumstantial evidence that the employer's decision to take the adverse job action was motivated by an impermissible purpose." *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 517 F.3d 470, 473 (7th Cir. 2008) (citation omitted). More specifically, "[d]irect

4

evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption" and "[c]ircumstantial evidence of discrimination is evidence which allows the trier of fact to infer intentional discrimination by the decisionmaker." *Nichols v. Southern Ill. Univ. – Edwardsville,* 510 F.3d 772, 781 (7th Cir. 2007) (citation omitted). "[C]ircumstantial evidence must point directly to a discriminatory reason for the termination decision." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006); *see also Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008).

Czarniecki asserts that he has provided sufficient circumstantial evidence that demonstrates a genuine issue of material fact for trial. *See Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007). Specifically, Czarniecki argues that Tobias' remark "we don't need people like you" after Czarniecki told him that he was Polish is direct evidence of unlawful national origin discrimination. "[A] particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Id.* at 491; *see also Petts v. Rockledge Furniture, LLC,* 534 F.3d 715, 721 (7th Cir. 2008). Moreover, "statements of a person who lacks the final decision-making authority may be probative of intentional discrimination if that individual exercised a significant degree of influence over the contested decision." *Sun v. Board of Trs. of Univ. of Ill.,* 473 F.3d 799, 813 (7th Cir. 2007).

Here, after Tobias asked Czarniecki questions about his national origin and the national origin of his parents, Czarniecki responded that he was born in Poland and that he and his parents are Polish. Tobias then responded that the CPD does not need people like Czarniecki. A few days later, Tobias recommended Czarniecki's termination to the Acting Deputy

5

Superintendent of the Bureau of Administrative Services. (Defs.' Stmt. Facts ¶ 61.) In fact, Tobias admits that he made the decision to terminate Czarniecki. (*Id.* ¶ 60.) Viewing the evidence and all reasonable inferences in a light most favorable to Czarniecki, Tobias – who decided to fire Czarniecki and exercised a significant degree of influence over the decision to terminate Czarniecki – commented to Czarniecki that the CPD did not need Polish police officers within days prior to Czarniecki's termination. Based on these facts, Tobias' remarks are direct evidence of national origin discrimination. *See Hemsworth,* 476 F.3d at 491; *Sun*, 473 F.3d at 813. Therefore, Czarniecki has fulfilled his burden of setting forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, 477 U.S. at 255; Fed.R.Civ. P. 56(e); *see also National Athletic Sportswear,* 528 F.3d at 512 (it is not the court's role at summary judgment to judge the credibility of the witnesses).[2]

### B. Qualified Immunity

Next, Tobias maintains that he is entitled to qualified immunity because his conduct did not violate Czarniecki's clearly established constitutional rights. Qualified immunity shields government officers performing discretionary functions from civil litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When determining whether qualified immunity shields a public official from a Section 1983 action, the Court undertakes a two-part inquiry. *Mannoia v. Farrow,* 476 F.3d 453, 457 (7th Cir. 2007) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). The Court's first

---

[2] Because Czarniecki has raised a genuine issue of material fact under the direct method of proof, the Court need not address Defendants' arguments under the indirect method of proof. *See Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 404 n.13 (7th Cir. 2007).

inquiry is whether the facts, viewed in the light most favorable to Czarniecki, show that Tobias' conduct violated a constitutional right. *See id.* (citing *Saucier,* 533 U.S. at 201). If the facts comprise a constitutional violation, the Court's second inquiry is whether the constitutional right "was firmly established at the time of the alleged injury, such that a reasonable officer would understand that his actions are in violation of that right." *Mannoia,* 476 F.3d at 457 (citing *Saucier*, 533 U.S. at 201).

As discussed above, Czarniecki has presented direct evidence of intentional national origin discrimination. Therefore, viewing the facts in a light most favorable to Czarniecki, he has established the first *Saucier* prong, namely, that Tobias violated his right to equal protection under the law. *See Mannoia,* 476 F.3d at 457. The Court thus turns to whether Czarniecki's equal protection right was clearly established at the time of Tobias' remarks and Czarniecki's termination as required by the second *Saucier* prong. *See id.* "To be 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what she is doing violates that right." *Michael C. v. Gresbach,* 526 F.3d 1008, 1013 (7th Cir. 2008). "The salient question is not whether there is a prior case on all fours with the current claim but whether the state of the law at the relevant time gave the defendants fair warning that their treatment of the plaintiff was unconstitutional." *McGreal v. Ostrov,* 368 F.3d 657, 683 (7th Cir. 2004).

To the extent that Tobias intentionally discriminated against Czarniecki by terminating his employment based on Czarniecki's national origin, Tobias is not entitled to qualified immunity because Tobias violated Czarniecki's clearly established rights under the Equal Protection clause. *See Contreras v. City of Chicago* 119 F.3d 1286, 1291 (7th Cir. 1997) ("The

Equal Protection Clause plainly prohibits state actors from intentionally discriminating based on race or national origin.") (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *see, e.g., Salas,* 493 F.3d at 926 (equal protection employment claim based on national origin discrimination). Moreover, because the alleged constitutional violation is patently obvious, Czarniecki need not cite case law that is directly on-point showing that the contours of the constitutional right are sufficiently clear. *See Nanda v. Moss,* 412 F.3d 836, 844 (7th Cir. 2005) ("where the constitutional violation is patently obvious, a plaintiff may not be required to present the court with any analogous cases.") (citing *Kernats v. O'Sullivan,* 35 F.3d 1171, 1176 (7th Cir. 1994)). Because Tobias' termination of Czarniecki's employment based on his national origin is "so obvious that a reasonable state actor would know that what he is doing violates the Constitution," *see McGreal,* 368 F.3d at 683, Tobias is not entitled to the defense of qualified immunity.

## II.    Monell Claim Against the City

Next, Czarniecki argues that there is an on-going pattern at the Training Academy in which Hispanic, non-whites are favored over other ethnicities, races, and colors.[3] Under Section 1983, a government agency cannot be liable under the theory of respondeat superior. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("municipality cannot be held liable *solely* because it employs a tortfeasor") (emphasis in original). In other words, "units of local government are responsible only for their policies rather than misconduct by their workers." *Fairley v. Fermaint*, 482 F.3d 897 (7th Cir. 2007).

---

[3] Czarniecki bases his argument – in part – on the mistaken belief that Matthew Tobias is Hispanic. Tobias, however, is of Russian descent. (Def.'s Stmt. Facts ¶ 66.)

Thus, to establish liability against the City, Czarniecki must show that (1) he suffered a deprivation of a federal right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that (3) proximately caused his constitutional injury. *Ovadal v. City of Madison,* 416 F.3d 531, 535 (7th Cir. 2005). Unconstitutional policies or customs include: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that a person with final policymaking authority caused the constitutional injury. *See Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008); *see also Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002) ("One way or another, the policy must be shown to be that of the municipality itself.").

Here, Czarniecki argues that Tobias had final policymaking authority, and therefore, the City is liable for Tobias' conduct under the third *Monell* scenario. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). To have final policymaking authority, an official must have the responsibility for making law or setting policy, namely, the official must have the authority to adopt rules for the conduct of the governmental entity. *See Killinger v. Johnson,* 389 F.3d 765, 771 (7th Cir. 2004); *Rasche v. Village of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003). In determining whether an individual is a final policymaker, the Court looks to state and local law, as well as custom having the force of law. *See Killinger,* 389 F.3d at 771-72.

Instead of relying on state law, local law, or custom having the force of law in support of his final policymaking argument, Czarniecki asserts that the City ratified Tobias' actions because

9

the City has done nothing to stop him. *See id.* at 772. Viewing the evidence in a light most favorable to Czarniecki, he has failed to set forth any evidence that the City, more specifically the CPD, ratified Tobias' conduct. Put differently, Czarniecki has failed to present evidence creating a genuine issue of material fact for trial that "a municipal official with final policymaking authority approved" of Tobias' conduct "and the basis for it." *Id.* (quoting *Baskin v. City of Des Plaines,* 138 F.3d 701, 705 (7th Cir. 1998)). Therefore, the Court grants Defendants' summary judgment motion as to Czarniecki's *Monell* claim.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

Dated: September 24, 2008

                                      **ENTERED**

                                      _____
                                      **AMY J. ST. EVE**
                                      **United States District Judge**